## The Parties

12.     Plaintiff LESTER LEE JAVIER ("Javier") is a graduate of Our Lady of Fatima University in Valenzuela City, Philippines, where he earned a Bachelor of Science degree in physical therapy.  He was recruited by defendant Marissa Teves Beck and employed by several of the corporate defendants, including most recently by defendant Medical Dynamic Systems Inc. as a Physical Therapy Rehab Manager.

13.     Defendant MARISSA TEVES BECK ("Mrs. Beck") is an individual with a track record of flagrantly abusing and violating the rights of non-immigrant workers in the United States.  Defendant Mrs. Beck at all relevant times exercised managerial or supervisory responsibility for personnel decisions at defendants Medical Dynamic Systems, Inc., Oasis Professional Management Group, Inc., Advanced Professional Marketing, Inc., Grill 21 LLC, Pan de Sal LLC, and Gramercy Group Four LLC.  Upon information and belief, defendant Mrs. Beck owned and/or controlled each of these corporate defendants at all times relevant to this complaint.

14.     Defendant HENRY R. BECK ("Mr. Beck") is Vice President of The Corcoran Group and husband of defendant Mrs. Beck.  Defendant Mr. Beck was at all relevant times the Chief Executive Officer of defendants Medical Dynamic Systems, Inc. and Oasis Professional Management Group, Inc.  Defendant Mr. Beck at all relevant times exercised managerial or supervisory responsibility for personnel decisions at defendants Medical Dynamic Systems, Inc., Oasis Professional Management Group, Inc., Advanced Professional Marketing, Inc., Grill 21 LLC, Pan de Sal LLC, and Gramercy Group Four LLC.  Upon information and belief, defendant Mr. Beck owned and/or controlled each of these corporate defendants at all times relevant to this complaint.

15.     Defendant MEDICAL DYNAMIC SYSTEMS, INC. ("Medical Dynamic") is and was at all relevant times a corporation organized under the laws of the State of New York with its principal place of business at 229 East 21st Street, Suite 1, New York, New York 10010.  Upon information and belief, defendant Medical Dynamic is owned and/or controlled by defendants Mrs. & Mr. Beck.

16.     Defendant OASIS PROFESSIONAL MANAGEMENT GROUP, INC. ("Oasis") is and was at all relevant times a corporation organized under the laws of the State of New York with its principal place of business at 229 East 21st Street, Suite 1, New York, New York 10010, the same place of business as defendant Medical Dynamic. Upon information and belief, defendant Oasis is owned and/or controlled by defendants Mrs. & Mr. Beck.

17.     Defendant ADVANCED PROFESSIONAL MARKETING, INC. ("APMI") is and was at all relevant times a corporation organized under the laws of the State of New York with its principal place of business at 229 East 21st Street, Suite 1, New York, New York 10010, the same place of business as defendants Medical Dynamic and Oasis.  Defendant Mrs. Beck is and was at all relevant times the President and Chief Executive Officer of defendant APMI.  Upon information and belief, defendant APMI is owned and/or controlled by defendants Mrs. & Mr. Beck.

18.     Defendant GRILL 21 LLC ("Grill 21") is and was at all relevant times a limited liability company organized under the laws of the State of New York with its principal place of business at 346 East 21st Street, New York, New York 10010. Defendant Grill 21 at all relevant times operated a restaurant at that location.  Upon

information and belief, defendant Grill 21 is owned and/or controlled by defendants Mrs. and Mr. Beck.

19. Defendant PAN DE SAL LLC ("Pan de Sal") is and was at all relevant times a limited liability company organized under the laws of the State of New York with its principal place of business at 245 East 21st Street, New York, New York 10010. Defendant Pan de Sal at all relevant times operated a restaurant at that location. Upon information and belief, defendant Pan de Sal is owned and/or controlled by defendants Mrs. & Mr. Beck.

20. Defendant GRAMERCY GROUP FOUR LLC ("Gramercy Group") is and was at all relevant times a limited liability company organized under the laws of the State of New York with a principal place of business at 278 First Avenue, New York, New York 10009. Upon information and belief, defendant Gramercy Group is owned and/or controlled by defendants Mrs. & Mr. Beck.

## Statement of Claims

21. In May 2011, defendant Marissa Teves Beck presented plaintiff Lester Lee Javier with a contract offering to employ plaintiff as a Physical Therapy Rehab Manager (the "2011 Contract"). The employer was defendant Medical Dynamic Systems, Inc. "together with its affiliates." The affiliates of defendant Medical Dynamic include defendants Oasis Professional Development Group, Inc., Advanced Professional Marketing, Inc., Grill 21 LLC, Pan de Sal LLC, and Gramercy Group Four LLC (collectively, the "Becks' Companies").

22. The Becks' Companies agreed to sponsor plaintiff for an H-1B visa and to take all reasonable steps to ensure that plaintiff obtained the relevant authorizations and

met the requirements to legally commence work in the United States. The Becks'

Companies also agreed to take all reasonable steps to maintain plaintiff's legal status to

work in the United States for the duration of the 2011 Contract. The duration of the 2011

Contract was three years.

23.     An H-1B visa allows a non-immigrant to work in the United States on a

temporary basis if certain conditions are met.

24.     The employer must submit a Labor Conditions Application to the United

States Department of Labor demonstrating that the employee will be paid the required

wage for the position in the geographic region where the job is located. The required

wage is the higher of the "actual wage" that is paid to other employees in this position or

the "prevailing wage."

25.     The Becks' Companies agreed in the 2011 Contract to pay plaintiff the

higher of $35.53 per hour or the prevailing wage, with compensation increases negotiated

every year. They also agreed to provide plaintiff with health insurance and other

benefits.

26.     Under the Immigration and Nationality Act, the employer is required to

pay all the fees associated with an application for an H-1B visa. These fees include: a

$325 application fee; a $750 or $1,500 training and scholarship fee; a $500 fraud

prevention fee; and an additional $2,000 fee for employers who employ 50 or more

employees in the United States with more than 50% of their employees in a non-

immigrant visa status.

27.     These H-1B visa fees must be paid by the employer and may not be passed

on, directly or indirectly, to the employee or any third party. The Becks' Companies

agreed in the 2011 Contract to incur a "significant cost" to obtain the H-1B visa for plaintiff and to ensure that he obtained any other relevant authorizations.

A.    **The Becks Breach the Contract, Violate the FLSA and Immigration Laws, and Demonstrate Their Contempt for This Court's Permanent Injunction**

28.    The Becks' Companies breached the 2011 Contract by failing to pay plaintiff the higher of $35.53 or the prevailing wage.  Instead, the Becks' Companies paid plaintiff only $15 per hour, thereby depriving him of more than $20 per hour for each and every hour he worked.

29.    The Becks and their companies also violated the FLSA and this Court's permanent injunction by creating and maintaining false and fraudulent hour and wage records with the purpose and effect of cheating plaintiff out of his base and overtime compensation.

30.    Each week, plaintiff submitted timesheets to Gina Zuluaga, the Becks' office manager, who indicated her approval by signing the timesheets.  The Becks then caused their companies to pay plaintiff by check.  The checks, however, always listed the number of hours worked as less than half the number of hours that were actually worked and that were approved by Ms. Zuluaga.

31.    For example, the timesheets for the week ending August 24, 2012, signed by Ms. Zuluaga, indicate that plaintiff worked for defendants at a clinic in New Jersey for a total of 36 hours that week.  The paycheck issued by defendants, however, was for only 15.2 hours.  Defendants paid plaintiff for only 15.2 hours to arrive at an effective hourly rate of only $15 per hour for the 36 hours that were actually worked.