32. The same reduction of hours appears on each and every paycheck plaintiff received from the Becks' Companies beginning with the first paycheck after he obtained an H-1B visa.

33. The purpose of reducing the number of hours reported on plaintiff's paycheck was to make it appear that plaintiff was receiving the $35.53 per hour required by the 2011 Contract and the immigration laws, when he was actually being paid only $15 per hour or less than half the required wage.

34. The effect of defendants' false and fraudulent wage and hours records was to deprive plaintiff of the wages he was entitled to be paid under both the 2011 Contract and the immigration laws. The effect was also to deprive plaintiff of his right under the FLSA to be paid one and one-half times his hourly rate during workweeks when he worked more than 40 hours. By cutting his hours in half for purposes of his paycheck, the defendants avoided ever recording that plaintiff had worked more than 40 hours in any workweek.

35. In addition to breaching the 2011 Contract and violating the FLSA and immigration laws, the defendants' acts of creating and maintaining false and fraudulent records of employee hours and wages demonstrated their willful contempt for this Court's permanent injunction. The permanent injunction requires that defendants Mrs. Beck and APMI "make, keep, and preserve adequate records of their employees and of the wages, hours, and other conditions" required by the FLSA and implementing regulations, and that they compensate employees "for their employment in excess of the prescribed hours at rates not less than one and one-half times the employees' regular rates."

**B.     The Becks Breach the Contract and Violate the
         Immigration Laws by Committing Immigration Fraud**

36.     Shortly after presenting plaintiff with the 2011 Contract, the Becks submitted an I-129 Petition to the United States Citizenship and Immigration Service (USCIS) to obtain an H-1B visa on behalf of plaintiff. The application was submitted over the signature of defendant Mr. Beck. Upon information and belief, Mr. Beck's signature was actually signed by Mrs. Beck with her husband's knowledge and consent.

37.     By signing the I-129 Petition for an H-1B visa, the Becks certified under penalty of perjury that the information contained in the petition and the evidence submitted with it were true and correct. In fact, the Becks' petition and evidence were false in every material respect.

38.     The Becks certified under penalty of perjury that plaintiff would work full time as a Physical Therapy Rehab Manager for the higher of $35.53 per hour or the prevailing wage at Metro Sportsmed in Brooklyn, New York. The Becks certified that plaintiff was not required to hold a valid license as a physical therapist because he would not be providing direct patient care as a Physical Therapy Rehab Manager. In support of the petition, the Becks submitted a staffing and master services agreement between the Becks' Companies and Metro Sportsmed.

39.     The Becks' submission to USCIS was false in every material respect. The Becks never intended to employ plaintiff as a Physical Therapy Rehab Manager, never intended to pay him $35.53 or the prevailing wage, and never intended that he would work at Metro Sportsmed in Brooklyn. When the Becks made these statements under penalty of perjury, they had already signed a contract for plaintiff to work as a physical therapy aide at a clinic in New Jersey. The clinic agreed to pay the Becks' Companies

$28 per hour for plaintiff's services, and the Becks intended to pay only $15 per hour to plaintiff. Contrary to their statements under penalty of perjury that plaintiff would not be providing direct patient care and would be acting only as a manager, plaintiff's responsibilities at the New Jersey clinic were exclusively providing direct patient care and involved no management responsibilities whatsoever.

40. By knowingly and willfully submitting false and fraudulent statements in connection with their application for an H-1B visa on plaintiff's behalf, the Becks and their companies breached their contractual obligation to take all reasonable steps to secure an H-1B visa and ensure that plaintiff obtained and maintained all relevant authorizations necessary to work legally in the United States.

41. The Becks and their companies also illegally charged plaintiff thousands of dollars for H-1B application fees that must be paid by the employer and may not be passed on, directly or indirectly, to the employee or any third party. Although plaintiff was technically employed by defendant Medical Dynamic, the Becks attempted to hide their fraud and illegality by instructing plaintiff to make the payments to defendant Oasis Professional Management Group. Inc. When defendant Oasis took thousands of dollars from plaintiff to pay for the Becks' H-1B application fees, defendant Oasis provided nothing in return to plaintiff.

C. **The Becks' Threatened and Actual Retaliation in Violation of the Trafficking Victims' Protection Act and the Immigration Laws**

42. The Becks repeatedly threatened to cause serious harm, as defined in the Trafficking Victims Protection Act, to plaintiff and any other non-immigrant employee who questioned their illegal conduct or attempted to leave their employ.

43. As a condition of employment and to obtain the Becks' promise of immigration assistance, plaintiff and other non-immigrant employees were required to agree to a confession of judgment for $15,000 in favor of the Becks' Companies (the "Indentured Servant Clause"). The Indentured Servant Clause provides that plaintiff and other non-immigrant employees must pay the Becks' Companies $15,000 if they stop working for the Becks for any reason other than the employee's death or disability.

44. This $15,000 penalty for leaving the Becks' employ represents more than 6 months of gross wages. It served as a constant threat of serious harm to plaintiff and any other non-immigrant employee who considered leaving the Becks' employ. The Becks reinforced that threat on a regular basis by reminding plaintiff and other employees that they would be sued for damages if they ever tried to leave.

45. The Becks also threatened to withdraw the H-1B visa petition of plaintiff and other non-immigrant employee who questioned their illegal conduct or refused to work for less than half the required wage under the immigration laws. These threats were made directly by the Becks and their scheduling assistant, Jeffrey Samonte.

46. On several occasions, Mrs. Beck and Mr. Samonte told plaintiff that his H-1B petition would be withdrawn unless he worked as a Physical Therapy Aide for only $15 per hour at various locations in New York and New Jersey. Mr. Samonte repeatedly told plaintiff that the Becks are powerful people, and that plaintiff must do exactly what they want him to do or they would punish him. The punishments would include terminating his employment, withdrawing his H-1B petition, and commencing a lawsuit against him. Under the Trafficking Victims Protection Act, these constitute threats of serious harm.

D. **The Becks' Continuous Pattern of Fraudulent Conduct in Furtherance of Their Illegal Scheme to Profit at the Expense of Non-Immigrant Employees**

47. The Becks' mistreatment of plaintiff is part of a larger and continuous pattern of fraudulent and illegal conduct designed to enhance their profits at the expense of non-immigrant employees. The precise number of victims is known only to the Becks, but upon information and belief the victims number in the hundreds.

48. As evidenced by the U.S. Department of Labor's 2008 determination letter and this Court's 2009 permanent injunction, the Becks' illegal conduct began more than five years ago. The Becks' illegal conduct has continued unabated to the present and has, in fact, become even more pervasive.

49. For example, in January 2009, the Becks required plaintiff to sign an employment contract with defendant Medical Dynamic and its affiliates as a condition to receiving their immigration assistance (the "2009 Contract"). The 2009 Contract required defendants to take all reasonable steps to ensure that plaintiff obtained the relevant authorizations and met the requirements necessary to work legally in the United States for the duration of the 2009 Contract, which was three years. The Becks represented in the 2009 Contract that Medical Dynamic and its affiliates would incur "significant cost" to provide such immigration assistance.

50. Defendants breached their obligations under the 2009 Contract by charging plaintiff thousands of dollars to submit an application for plaintiff to obtain an F-1 (student) visa that would allow him to work only 20 hours per week, and by submitting false and fraudulent statements to the USCIS in support of their application.

51. As part of their application for an F-1 (student) visa, the Becks submitted a false and fraudulent affidavit of support purportedly signed by Mr. Beck but, upon

15