UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LESTER LEE JAVIER,

                    Plaintiff,

     -against-

MARISSA TEVES BECK, et al.,

                  Defendants.

Docket No. 13-cv-02926 (WHP)

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT

**HINSHAW & CULBERTSON LLP**
*Attorneys for Defendants*
**800 Third Avenue, 13th Floor**
**New York, New York 10022**
**Tel: (212) 471-6200**
**Fax: (212) 935-1166**

## <u>TABLE OF CONTENTS</u>

**Page(s)**

PRELIMINARY STATEMENT ...................................................................................1

STATEMENT OF FACTS ........................................................................................1

    A.   Plaintiff's Individual Allegations..................................................................1

    B.   Plaintiff's RICO Claims ............................................................................4

STANDARD OF REVIEW .......................................................................................5

POINT I
PLAINTIFF'S FLSA CLAIMS ARE INSUFFICIENTLY PLED.......................................5

    A.   Plaintiff Fails to Allege That The Coroprate Defendants Are Joint Employers .........5

    B.   The Amended Complaint Fails As Against The Individual Defendants....................7

    C.   Plaintiff's Claims For Unpaid Time Are Insufficient ...................................7

    D.   Plaintiff's Overtime Claim Fails .............................................................8

POINT II
PLAINTIFF FAILS TO STATE A CLAIM FOR VIOLATIONS OF THE TVPA..........10

POINT III
PLAINTIFF'S CLAIMS ALLEGING VIOLATIONS OF RICO FAIL AS A
MATTER OF LAW AND SHOULD BE DISMISSED WITH PREJUDICE .................12

    A.   Plaintiff's Failure to Allege a RICO Enterprise is Fatal ...........................12

    B.   There Are No Viable Claims Of Racketeering ......................................14

        (i)   The Alleged Predicate Acts...................................................15

            a)   Violations of 18 U.S.C. §§ 1584, 1589, 1590....................15

            b)   Violation of 18 U.S.C. § 241 and 42 U.S.C. § 1343(a).......15

            c)   Fraud Claims: Violations of 18 U.S.C. §§1341, 1343, 1351(a)
               and 1546...........................................................................15

                 1.   18 U.S.C. § 1351(a) ............................................15

2.   18 U.S.C. § 1546.......................................................................15

3.   18 U.S.C. §§ 1341 and 1343....................................................15

4.   Extortion ...................................................................................17

(ii)   Failure to Plead Pattern of Racketeering.........................................17

C.   Failure to Allege a RICO Conspiracy Under § 1962(d)............................................18

D.   Plaintiff Does Not Have a RICO Injury ...................................................................19

POINT IV
THE BREACH OF CONTRACT CLAIM MUST BE DISMISSED...............................20

A.   Plaintiff Does Not Allege Performance ...................................................................20

B.   The Breach Of Contract Against The Non-Employer Defendants is Insufficient ....22

POINT V
PLAINTIFF'S FRAUD CLAIM IS DUPLICATIVE OF HIS CLAIM FOR
BREACH OF CONTRACT............................................................................................23

POINT VI
PLAINTIFF'S QUASI-CONTRACT CLAIMS SHOULD BE DISMISSED .................24

CONCLUSION..................................................................................................................25

130670334v1 0948047

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases:**

*Adler v. Berg Harmon Assocs.*,
    790 F.Supp. 1222 (S.D.N.Y. 2000)...................................................................19

*Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc.*,
    404 F.3d 566 (2d Cir. 2005)...........................................................................21

*Allen v. West Point-Pepperell, Inc.*,
    945 F.2d 40 (2d Cir. 1991)..............................................................................5

*Alvarado v. Universidad Carlos Abizu*,
    2010 WL 3385345 (S.D. Fl. Aug. 25, 2010) ................................................ 10-11

*Ashcroft v. Iqbal*,
    556 U.S. 662, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009)..........................................5

*Bell Atlantic Corp. v. Twombly*,
    540 U.S. 544, 124 S. Ct. 1200, 157 L.Ed.2d 1060 (2007)........................................5

*Bellino Schwartz Padob Adver., Inc. v. Solaris Mktg. Group, Inc.*,
    222 A.D.2d 313, 635 N.Y.S.2d 587 (1995) ......................................................22

*Bezuska v. L.A. Models, Inc.*,
    No. 04 Civ 7703, 2006 WL 770526 (S.D.N.Y. Mar. 24, 2006) .............................24

*Black Car & Livery Ins., Inc. v. H & W Brokerage, Inc.*,
    28 A.D.3d 595, 813 N.Y.S.2d 751 (2006) ........................................................22

*Bloom v. Rock*,
    No. 06 Civ. 6301, 2010 WL 2267468 (S.D.N.Y. May 27, 2010)............................24

*Camayo v. John Peroulis & Sonssheep, Inc.*,
    2012 WL 4359086 (D. Col. Sept. 24, 2012)......................................................12

*Carter v. Dutchess Community College*,
    735 F.2d 8 (2d Cir. 1984) ...............................................................................6

*Cement & Concrete Workers Dist. Council Welfare Fund v. Lollo*,
    35 F.3d 29 (2d Cir.1994)................................................................................23

*Chaves v. Freshpict Foods, Inc.*,
    456 F.2d 890 (10th Cir. 1972) ........................................................................25

*Colony at Holbrook, Inc. v. Strata G.C., Inc.*,
    928 F.Supp.1224 (E.D.N.Y. 1996) ..................................................................16

*Comtomark, Inc. v. Satellite Communications Network, Inc.*,
497 N.Y.S.2d 371 (1st Dep't 1986) ............................................................24

*Crichton v. Golden Rule Ins. Co.*,
576 F.3d 392 (7th Cir. 2009) ....................................................................12

*In re Currency Conversion Fee Antitrust Litig.*,
265 F.Supp.2d 385 (S.D.N.Y.2003)...........................................................24

*D.R.S. Trading Company, Inc. v. Fisher*,
2002 WL 1482764 (S.D.N.Y. July 10, 2002) .........................................18

*DeSilva v. North Shore-Long Island Jewish Health Sys., Inc.*,
770 F. Supp. 2d 497 (E.D.N.Y. 2011) ...............................................8, 20

*Discon, Inc. v. NYNEX Corp.*,
93 F.3d 1055 (2d Cir. 1966)......................................................................12

*Fahlenbach v. Trans Pac. Captial (USA) Inc.*,
No. 95-civ-8776, 1996 WL 22602 (S.D.N.Y. 1996) .............................19

*Freedom Mortg. Corp. v. Burnham Mortg., Inc.*,
720 F.Supp.2d 978 (N.D. Ill. 2010) ......................................................16

*Grandon v. Merrill Lynch & Co.*,
147 F.3d 184 (2d Cir. 1998)........................................................................5

*Gregoris Motors v. Nissan Motor Corp.*,
630 F.Supp. 902 (E.D.N.Y. 1986) .....................................................17, 18

*Gross v. Waywell*,
628 F.Supp.2d 475 (S.D.N.Y. 2009)........................................................12

*Hadden v. Consolidated Edison Co. of New York*,
45 N.Y.2d 466 (1978) ...............................................................................21

*Headley v. Church of Scientology International*,
687 F.3d 1173 (9th Cir. 2012) ...........................................................10, 11

*Hecht v. Commerce Clearing House, Inc*.,
897 F.2d 21 (2d Cir. 1990)..............................................................15, 20, 21

*Herman v. RSR Sec. Servs. Ltd.*,
172 F.3d 132 (2d Cir. 1999)........................................................................7

*Holland Industries, Inc. v. Adamar of New Jersey, Inc.*,
550 F. Supp. 646 (S.D.N.Y. 1982).............................................................21

iv

*James v. Countrywide Fin. Corp.*,
  849 F. Supp. 2d 296 (E.D.N.Y. 2012) ...................................................................................9

*Jofen v. Epoch Biosciences, Inc.*,
  2002 WL 1461351 (S.D.N.Y. 2002)....................................................................................21

*Kaufman v. Chase Manhattan Bank, N.A.*,
  581 F.Supp. 350 (S.D.N.Y.1984)........................................................................................13

*Kuebel v. Black & Decker, Inc.*,
  643 F.3d 352 (2d. Cir. 2011)................................................................................................8

*Livingston Downs Racing Ass'n, Inc. v. Jefferson Downs Corp.*,
  257 F. Supp. 2d 819 (M.D. La. 2002)..................................................................................16

*Lundy v. Catholic Health Sys. of Long Island, Inc.*,
  711 F.3d 106 (2d. Cir. 2013)........................................................................................8, 9, 17

*Manning v. Boston Med. Ctr. Corp.*,
  2012 WL 1355673 (D. Mass. 2012) .....................................................................................7

*Mathon v. Feldstein*,
  303 F.Supp.2d 317 (E.D.N.Y. 2004) ..............................................................................17, 18

*McAllister Lighterage Line, Inc. v. Insur. Co. of North America*,
  244 F.2d 867 (2d Cir. 1957).................................................................................................22

*McCullough v. Suter*,
  757 F.2d 142 (7th Cir. 1985) ..........................................................................................12, 13

*Metropolitan Switch Bd. Co., Inc. v. Amici Associates, Inc.*,
  20 A.D.3d 455, 799 N.Y.S.2d 531 (2d Dept.2005) .............................................................23

*Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*,
  418 F.3d 168 (2d Cir. 2005).................................................................................................25

*Murray v. Miner*,
  74 F.3d 402 (2d Cir. 1996)...................................................................................................23

*Neiman Marcus Group, Inc. v. Dispatch Transp. Corp.*,
  2011 WL 1142922 (S.D.N.Y. March 17, 2011) ...................................................................13

*Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co.*,
  86 N.Y.2d 685 (1986) ..........................................................................................................21

*Payday Advance Plus, Inc. v. Findwhat.com, Inc.*,
  478 F. Supp. 2d 496 (S.D.N.Y. 2007)..................................................................................25

v

*In re Platinum and Palladium Commodities Litigations,*
  828 F.Supp.2d 588 (S.D.N.Y. Sept. 13, 2011) ...................................................14

*Sampson v. MediSys Health Network, Inc.,*
  2012 WL 3027850 (E.D.N.Y. Feb. 9, 2012).......................................................7

*Sedima, S.P.R.L. v. Imrex Co.,*
  473 U.S. 479 (1985)...........................................................................................20

*Seven-Up Bottling Co. (Bangkok), Ltd. v. PepsiCo., Inc.,*
  686 F.Supp. 1015 (S.D.N.Y. 1988)............................................................. 21-22

*Skylon Corp. v. Guilford Mills, Inc.,*
  1997 WL 88894 (S.D.N.Y. Mar 3, 1997) ..........................................................18

*Snyder v. Fantasy Interactive, Inc.,*
  11 Civ. 3593 (WHP), 2012 WL 569185 (S.D.N.Y. Feb. 9, 2012) ........................9

*United States v. Aulicino,*
  44 F.3d 1102, (2d Cir. 1995)..............................................................................18

*United States Fire Ins. Co., v. United Limousine Service, Inc.,*
  303 F.Supp.2d 432 (S.D.N.Y. 2004)..................................................................19

*United States v. Bradley,*
  390 F.3d 145 (1st Cir. 2004)........................................................................10, 11

*United States v. Computer Sciences Corp.,*
  689 F.2d 1181 (4th Cir. 1982) ..................................................................... 12-13

*United States v. Kozminski,*
  487 U.S. 931, 108 S.Ct. 2751, 101 L.Ed. 2d 788 (1988).....................................11

*Watkins v. Smith,*
  2012 WL 5868395 (S.D.N.Y. 2012).....................................................................18

*Wolman v. Catholic Health Sys. of Long Island,*
  No. 10-CV-1326 (JS)(ETB), 2012 WL 566255 (E.D.N.Y. Feb. 16, 2012).............6

*Young v. Cooper Cameron Corp.,*
  586 F.3d 201 (2d Cir. 2009)..................................................................................9

*Zheng v. Liberty Apparel Co.,*
  355 F.3d 61 (2d Cir. 2003)....................................................................................6

130670334v1 0948047

**Statutes:**

8 C.F.R. § 214.2(h)(II) ....................................................................................................11

29 C.F.R. § 785.16(a) .......................................................................................................8

29 C.F.R. § 785.27 ............................................................................................................8

18 U.S.C. § 241 ...............................................................................................................15

18 U.S.C. §§ 1341, 1343, 1351(a) and 1546 ...................................................................15

18 U.S.C. §§ 1584, 1589, 1590 ...................................................................................10, 15

18 U.S.C. § 1961(5) .........................................................................................................14

18 U.S.C. § 1962(c) .....................................................................................................12, 19

18 U.S.C. § 1962(d) .................................................................................................12, 18, 19

42 U.S.C. § 1343(a) .........................................................................................................15

NY Penal Law § 155.05(2)(e) .........................................................................................17

130670334v1 0948047

## PRELIMINARY STATEMENT

The Amended Complaint, consisting of 287 paragraphs, is replete with inflammatory allegations which serve no other purpose than to dress up an employment dispute arising from his refusal to return to work by claiming violations of the Fair Labor Standards Act ("FLSA"), the Trafficking Victims And Protection Act ("TVPA") and the Racketeeer Influenced And Corrupt Organizations Act ("RICO") and asserting claims for breach of contract, fraud, unjust enrichment and quantum meruit.  As fully set forth below, Plaintiff's efforts fall far short of stating plausible claims against the Defendants.[1]  Accordingly, the Amended Complaint should be dismissed.

## STATEMENT OF FACTS

### A.    Plaintiff's Individual Allegations.

Plaintiff entered into two employment agreements with MDSI executed in 2009 and 2011, which are tellingly not attached to the Amended Complaint.[2]  Plaintiff does not allege that he misunderstood or was coerced into signing these Agreements.  (Am. Cplt,. ¶85).  Plaintiff was allegedly recruited from the Philippines by Jeffrey Samonte, the scheduling assistant of the Becks.  (Am. Cplt., ¶¶45, 240(i)-(k)).  The 2009 Agreement was signed on January 23, 2009 in the United States.  Plaintiff was back in the Philippines by July 2009 (Am. Cplt., ¶240(i)-(k)) and, as alleged, was working with MDSI by July 1, 2010 in the United States. (Am. Cplt., ¶89(a)).

The 2009 Agreement takes effect when Plaintiff "first renders actual services…as a **duly Licensed Physical Therapist**" and excludes services rendered prior to Plaintiff obtaining all

---

[1]  Defendants Henry R. Beck and Marissa Teves Beck are hereinafter referred to as the "Individual Defendants." Defendants Medical Dynamic Systems, Inc. ("MDSI"), Oasis Professional Management Group, Inc. ("Oasis"), Advanced Professional Marketing, Inc. ("APMI"), Grill 21 LLC ("Grill 21"), Pan De Sal LLC ("Pan De Sal") and Gramercy Group Four LLC ("Gramercy Group") are hereinafter referred to as the Corporate Defendants.

[2]  A copy of the 2009 Employment Agreement, dated January 23, 2009, is annexed to the Declaration of Concepcion A. Montoya ("Montoya Decl."), dated October 15, 2013, as Exhibit A; a copy of the 2011 Employment Agreement, dated May 2, 2011, is annexed as Exhibit B to the Montoya Decl.

required licenses.  (Exh. A, ¶1) (emphasis in the original).  As a licensed Physical Therapist, Plaintiff is to receive $28 per hour for the first year (Exh. A, ¶5) and work a minimum of 40 hours per week (Exh. A, ¶3).  Plaintiff is an at-will employee.  (Exh. A, ¶11).  However, Plaintiff does not allege that he rendered services as a duly Licensed Physical Therapist pursuant to the 2009 Agreement.  Indeed, Plaintiff acknowledges that, as of March, 2013, he was "trying to study for the licensing exam."  (Complaint, ¶67).

Plaintiff alleges that the "confession of judgment for $15,000" in the 2009 Agreement "served as a constant threat" and Mrs. Beck and Mr. Samonte reminded him that he would be sued for damages if he left their employ (Am. Cplt., ¶44).  Plaintiff claims that when there was not enough work, he worked at Defendant Grill 21 as a dishwasher, delivery boy and cook.  (Am. Cplt., ¶8).  Moreover, Plaintiff alleges that Mrs. Beck used the "uniquely Filipino sense of *utang na loob*, *hiya* and *kapwa*" to compel him to continue working for Defendants.  (Am. Cplt., ¶100).  Plaintiff does not allege, however, that he tried to leave his employment but was expressly prevented.

In 2010, Defendants submitted an F-1 (student) visa allegedly supported by "false and fraudulent statements."  (Am. Cplt., ¶50).  Mrs. Beck allegedly wrote letters to the Social Security Administration ("SSA") which contained "material misrepresentations" concerning Plaintiff's title and number of hours worked.  (Am. Cplt., ¶¶56-57).  Yet, Plaintiff does not allege that the F-1 visa was denied or that he failed to obtain a social security number despite the alleged fraud.

Notwithstanding these alleged threats and treatment by the Defendants, Plaintiff nonetheless signed another employment agreement with Defendants in 2011.  (Am. Cplt., ¶21).  The 2011 Agreement also provides that Plaintiff is an at-will employee, that employment begins once Plaintiff renders services as a "Physical Therapy Rehab Manager" and excludes services

rendered prior to obtaining all required licenses (Exh. B, ¶¶1, 11).  Plaintiff does not allege that he rendered services as a Physical Therapy Rehab Manager or that he completed any licensing. As a Physical Rehab Manager, Plaintiff is to receive $35.53 per hour (Exh. B, ¶5) and work a minimum of 25 hours per week (Exh. B, ¶¶3, 5), not the alleged 40 hours.

Plaintiff alleges that he was sponsored for an H-1B visa (Am. Cplt., ¶36), that contained "false and fraudulent statements" which failed to ensure that Plaintiff "obtain[] and maintain[] all relevant authorizations necessary to work legally in the United States."  (Am. Cplt., ¶40). Plaintiff admits, however, that he did in fact obtain the H-1B visa.  (Am. Cplt., ¶32).

Plaintiff's timesheets[3] were approved by Gina Zuluaga, purportedly the "Becks' office manager."  (Am. Cplt., ¶30).  However, Plaintiff's timesheets show that they were counter-signed by an "authorized representative of the facility" where Plaintiff worked, not all of whom was Ms. Zuluaga.  (Montoya Decl., Ex. C).  Further, Plaintiff alleges that his paychecks reflected an "effective hourly rate of $15 per hour."  (Am. Cplt., ¶31; see also ¶¶28, 31, 33, 46).  These reductions supposedly deprived him of overtime between July 1, 2010 and May 19, 2011.  (Am. Cplt., ¶34, 89(a)-(l)).  Plaintiff's timesheets completely refute these allegations.

By March 12, 2013, Plaintiff alleges that he was on an authorized leave of absence to study for a licensing exam.  (Am. Cplt., ¶¶65-66).  When Mrs. Beck allegedly demanded that Plaintiff return to work (Am. Cplt., ¶¶ 65, 69), Plaintiff refused and said that he was considering a lawsuit against the Becks.  (Am. Cplt., ¶70).  The Becks allegedly retaliated by terminating him and withdrawing his H-1B petition on the grounds that he did not report to work.  (Am. Cplt., ¶¶71, 75).  Plaintiff alleges that he was not provided with a written notice of termination and reasonable transportation costs to return to the Philippines (Am. Cplt., ¶¶74, 76).  Notably,

---

[3]  True and correct copies of Plaintiff's timesheets for the time periods referenced in the Amended Complaint are annexed as Exhibit C to the Montoya Decl.

Plaintiff does not allege that he sought and was refused transportation costs to return to the Philippines.  Within two months of his termination, Plaintiff filed the instant action.

### B.    Plaintiff's RICO Claims.

Plaintiff alleges, "upon information and belief," that the Defendants engaged in a pattern of wrongdoing consisting of false contracts and filing fraudulent H-1B visa and Labor Condition Applications which affected hundreds of anonymous non-immigrant victims (Am. Cplt., ¶¶ 7, 61-64).  Plaintiff further alleges that the Defendants constitute an "association-in-fact" as well as an "enterprise" that function "collectively as a continuing unit" operated by the Becks for the "common purpose or recruiting non-immigrant healthcare workers."  (Am. Cplt., ¶¶110-116).  Without specifying what each Defendant did, Plaintiff alleges a series of "predicate acts" committed by the "enterprise" including forced labor (Am. Cplt., ¶¶119-126); trafficking (Am. Cplt., ¶¶127-130); involuntary servitude (Am. Cplt., ¶¶130-135); fraud in connection with foreign labor contracting (Am. Cplt., ¶¶137-141); immigration fraud (Am. Cplt., ¶¶142-145); false statements before the SSA (Am. Cplt., ¶¶146-148); mail and wire fraud as (Am. Cplt., ¶¶149-153); and extortion (Am. Cplt., ¶¶154-173).  Each alleged "Predicate Act" consists of no more than a recitation of the elements for each claimed violation.  (*See* Am. Cplt., ¶¶119-125, 127-129, 136, 137-140,147-152, 154-172).   In addition, Plaintiff alleges that each Defendant "manifested an agreement" to violate § 1692(c) by engaging in the predicate acts "no later than 2008."  (Am. Cplt., ¶¶186-188), but also inconsistently alleges that the illegal acts have been ongoing "since at least 2001" with respect to more than 100 non-immigrant healthcare workers." (Am. Cplt., ¶197).  Finally, as to his RICO injury, Plaintiff claims deprivation of his immigration status, overtime pay, the rate of pay specified in the 2009 and 2011 Employment Agreements, and fees in connection with his visa application.  (Am. Cplt., ¶183).

## STANDARD OF REVIEW

On a motion to dismiss, a court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in plaintiff's favor. *Grandon v. Merrill Lynch & Co.*, 147 F.3d 184, 188 (2d Cir. 1998). However, "factual allegations must be enough to raise a right of relief above the speculative level …." *Bell Atlantic Corp. v. Twombly*, 540 U.S. 544, 556, 124 S. Ct. 1200, 157 L.Ed.2d 1060 (2007). To survive a motion to dismiss, a complaint must "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Twombly*, 555 U.S. at 570). The "plausibility standard" asks for more than a sheer possibility that a defendant has acted unlawfully. *Iqbal*, 129 S. Ct. at 1949. A complaint that offers "formulaic recitation of the elements of a cause of action will not do" and "naked assertions" devoid of further factual enhancement will not suffice. *Id*. Moreover, a court may only consider "the facts stated on the face of the complaint, in the documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Allen v. West Point-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991). Here, the Court may take judicial notice of the Agreements and timesheets as they are referenced in the Amended Complaint. Finally, should the Court dismiss Plaintiff's federal claims, the Court should refrain from exercising supplemental jurisdiction over the state claims.

## POINT I

## PLAINTIFF'S FLSA CLAIMS ARE INSUFFICIENTLY PLED

### A.   Plaintiff Fails To Allege That The Corporate Defendants Are Joint Employers.

Plaintiff alleges that the "Becks' Companies," consisting of Defendants APMI, Grill 21, Pan de Sal and Gramercy Group Four, are "employers … within the meaning of section 3(d)" of the FLSA (Am. Cplt., ¶79) by relying on the phrase "together with its affiliates, successors and assigns" in the Agreements. (Am. Cplt., ¶21). However, neither Agreement define the terms

"affiliates," "successors" or "assigns" and only MDSI is the identified employer and signatory to these Agreements.  (Montoya Decl., Exhs. A and B).  A defendant cannot be held liable for FLSA violations merely because they "share common ownership or are otherwise part of a common enterprise where some entities are employers" of plaintiff.  *Wolman v. Catholic Health Sys. of Long Island*, No. 10-CV-1326 (JS)(ETB), 2012 WL 566255 at *5 (E.D.N.Y. Feb. 16, 2012) (citations omitted).  The mere use of the term "affiliates" therefore is insufficient to conclude that all of the Defendants employed Plaintiff.

The Second Circuit identified four factors relevant to a joint employment inquiry: "'whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records.'"  *Carter v. Dutchess Community College*, 735 F.2d 8, 12 (2d Cir. 1984) (citations omitted).  A court may also use the functional control test to determine employment.  *See Zheng v. Liberty Apparel Co*., 355 F.3d 61, 71 (2d Cir. 2003) (factors include the extent to which plaintiff performed a discrete line job; responsibility that could pass from one entity to another without material changes; degree of supervision; exclusive or predominant employment).  Here, other than MDSI, the Amended Complaint is devoid of allegations as to which Corporate Defendant exerted significant control over his employment, such as the power to hire or fire him, supervised his work, determined his rate of pay or maintained his employment records.  *See*, *e.g*., *Sampson v. MediSys Health Network, Inc.*, 2012 WL 3027850 at *7 (E.D.N.Y. Feb. 9, 2012) (dismissing FLSA claim where no facts indicated that corporate defendant had any direct role in hiring or firing, or that it supervised or control plaintiff's work schedules, or that it had any direct role in controlling plaintiff's conditions of employment).  There are also no factual allegations upon which to assess whether any of the Corporate Defendants, other than MDSI, had functional control over

Plaintiff's employment.  The allegation that he "was employed by defendants to provide services at clinics and other medical facilities that contracted with defendants" (Am. Cplt., ¶ 83), is insufficient to support a joint employer relationship among the Defendants with respect to the Plaintiff.  Occasional work at Grill 21 as a restaurant worker, when work as a physical therapy aide was insufficient, does not create joint employment.

**B.**   **The Amended Complaint Fails As Against The Individual Defendants.**

"The individual sought to be held liable cannot be just any employee with some supervisory control over other employees and must be instrument in causing the corporation to violate the FLSA."  *Manning v. Boston Med. Ctr. Corp.*, 2012 WL 1355673 at *8 nn. 9, 10 (D. Mass. 2012).  *See also Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 139 (2d Cir. 1999) ("The overarching concern is whether the alleged employer possessed the power to control the workers in question").  Here, other than alleging that they controlled and operated the Becks' Companies, Plaintiff has not alleged facts to plausibly show that the Becks made decisions concerning his weekly hours or approved his timesheets.  Indeed, Plaintiff alleges that his timesheets were approved by Ms. Zuluaga, not by the Becks.  Mere ownership is insufficient and, thus, Plaintiff has failed to show that the individual defendants qualify as "employers" for FLSA purposes.

**C.**   **Plaintiff's Claims For Unpaid Time Are Insufficient.**

Plaintiff seeks compensation for unpaid marketing and administrative tasks, and attending an English language class.  (Am. Cplt., ¶¶84-86, 89).  If Plaintiff is seeking to recover "straight time" or "gap time" for hours worked under 40 hours, such claims are not covered by the FLSA.  *Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106, 115 (2d. Cir. 2013); *DeSilva v. North Shore-Long Island Jewish Health Sys., Inc.*, 770 F. Supp. 2d 497, 508, n.4 (E.D.N.Y. 2011).  "So long as an employee is being paid the minimum wage or more, FLSA does not provide recourse for unpaid hours below the 40-hour threshold, even if the employee also works overtime hours the same week."  *Lundy*, 711 F.3d at 115.  Plaintiff states that he was

paid $15 per hour, which is substantially more than the minimum wage.  (Am. Cplt., ¶¶28, 31, 33, 39, 46, 67).  Thus, any such claims are not compensable under the FLSA.

Plaintiff's allegations regarding administrative and marketing tasks (Am. Cplt., ¶84) also fall short because Plaintiff does not allege that he performed such tasks *during* working hours or that he was contractually required to perform those tasks.  This omission is critical as "[p]eriods during which an employee is completely relieved from duty and which are long enough to enable him to use the time effectively for his own purposes are not hours worked" even if the employee chooses to do work related tasks during such time period.  29 C.F.R. § 785.16(a).  In *Kuebel v. Black & Decker, Inc.*, 643 F.3d 352 (2d. Cir. 2011), the Second Circuit found that plaintiff had the flexibility of when to complete his daily administrative responsibilities and those tasks were not compensable if performed after hours.  Moreover, Plaintiff does not allege how many hours he expended each week on these task which exceeded 40 hours.

Attendance at the English language school is also not compensable under the FLSA.  Attendance is not counted "as working time" if it is (1) outside the employee's regular working hours; (2) voluntary; (3) not directly related to the employee's job; and (4) the employee does not perform any productive work during such attendance.  29 C.F.R. § 785.27.  In this case, Plaintiff states that the "sole purpose of [his] attendance at this school was to secure and maintain the F-1 (student) visa …."  (Am. Cplt. ¶85).  Clearly, attendance at this school served a different purpose and was not related to the services he performed as a physical therapy aide.

## D.     Plaintiff's Overtime Claim Fails.

The FLSA requires compensation to employees who work in excess of 40 hours per week "at a rate not less than one and one-half times the regular rate at which he is employed."  *Young v. Cooper Cameron Corp*., 586 F.3d 201, 204 (2d Cir. 2009) (citations omitted).  A complaint must allege when the unpaid wages were earned.  *Snyder v. Fantasy Interactive, Inc*., 11 Civ.

3593 (WHP), 2012 WL 569185 at *4 (S.D.N.Y. Feb. 9, 2012).  The failure to include any facts beyond stating the period of time during which no overtime was paid is insufficient.  *James v. Countrywide Fin. Corp.*, 849 F. Supp. 2d 296, 321 (E.D.N.Y. 2012).  Theoretical hours worked that could put the plaintiff over the 40-hour mark "supply nothing but low-octane fuel for speculation, not the plausible claim that is required."  *Lundy*, supra at *5.  Here, Plaintiff breaks down each work week and approximates the unpaid overtime by alleging "at least" a certain number of hours per week.  (Am. Cplt., ¶89(a)-(l)).  This is speculation and is not a basis for a plausible FLSA claim.

In any event, Plaintiff's timesheets for the alleged time periods, which are referenced in the Amended Complaint, conclusively refute his allegations as they all reflect hours worked below 40 hours.  (*See* Exh. C).  Additionally, Plaintiff claims that he "worked at least 42 hours during [the] workweek" of "May 12, 2011 through May 19, 2011."  (Am. Cplt. 89(l)).  However, Plaintiff was approved for a two week leave from May 16, 2011 through May 27, 2011 to "study for the NPTE exam."  (Exh. C).  Furthermore, Plaintiff does not allege that his timesheets were inaccurate, falsified or that he was forced or compelled to sign his timesheets.  By his own allegations, Plaintiff filled out, signed, collected the counter-signatures and submitted his timesheets to MDSI (Am. Cplt., ¶84).  In so doing, Plaintiff attested to the accuracy of the hours worked.  The timesheets show counter-signatures by an "authorized representative of the facility," some of which reflect the signature of Ms. Zuluaga and some of which do not.  Plaintiff's conclusory allegation that Ms. Zuluaga is an "employee" of Defendants has no basis.  Indeed, Plaintiff's timesheets eviscerate Plaintiff's FLSA claims.

## POINT II

## <u>PLAINTIFF FAILS TO STATE A CLAIM FOR VIOLATIONS OF THE TVPA</u>

Plaintiff's TVPA claims are based upon (a) the confession of judgment, which allegedly "served as a constant threat of serious harm" (Am. Cplt., ¶44); (b) the direct threats to withdraw the H-1B visa petition in the event that Plaintiff does not work for $15 per hour (Am. Cplt., ¶¶45-46); (c) warnings of "serious immigration consequences, including deportation, if they withdraw their petition for his visa;" and the use of Filipino cultural values to instill a sense of obligation and shame.  (Am. Cplt., ¶¶ 94, 98-100).  The Amended Complaint alleges that the Becks perpetrated these violations and that the Corporate Defendants benefitted from them. (Am. Cplt., ¶¶ 101-104).  Plaintiff also claims that Defendants engaged in illegal trafficking in violation of § 1590 and that he was subjected to involuntary servitude in violation of § 1584. (Am. Cplt., ¶¶ 127-130, 136).

As has now become pattern, Plaintiff relies on group pleading and does not specify how each Corporate Defendant benefitted from Plaintiff's labor.  Plaintiff does not allege what services he performed under threat that benefitted APMI, Oasis, Pan De Sal, Grill 21 and/or Gramercy Group.  As for the Becks, warnings of adverse consequences of employment do not amount to actionable threats under the TVPA.  *Headley v. Church of Scientology International*, 687 F.3d 1173, 1180 (9th Cir. 2012).  Courts distinguish between "improper threats or coercion and permissible warnings of adverse but legitimate consequences."  *United States v. Bradley*, 390 F.3d 145, 151 (1st Cir. 2004).  To prevail on the TVPA, an employee is obligated to show that the threatened use of the legal process is a **misuse** of that process. *Alvarado v. Universidad Carlos Abizu*, 2010 WL 3385345 (S.D. Fl. Aug. 25, 2010) (emphasis added).  To plead involuntary servitude and illegal trafficking under § 1584, a plaintiff must allege facts that would

establish "compulsion of services by use or threatened use of physical or legal coercion." *United States v. Kozminski*, 487 U.S. 931, 953, 108 S.Ct. 2751, 101 L.Ed. 2d 788 (1988).

Here, Marissa Beck's alleged threats concerned the possible enforcement of the confession of judgment; the employment restrictions on his H-1B visa; and the withdrawal his H-1B visa once employment ends.  (Am. Cplt., ¶¶ 93-94).  Because the Agreements do not take effect until he renders services specified therein and Plaintiff did not do so, the confession of judgment is of no moment.  Warnings about the employment restrictions on his visa and the effects of withdrawing his H-1B visa are permissible.  MDSI is legally obligated to withdraw the H-1B petition once Plaintiff was no longer employed.  8 C.F.R. § 214.2(h)(II).  Notably, Plaintiff states that Marissa Beck "granted him a leave of absence to study for a licensing exam" (Am. Cplt., ¶66) at least twice (See Exh. C), thus undermining any notion of forced labor.  Tellingly, Plaintiff does not allege that Defendants retained his passport, that his movements were restricted or that he was otherwise prevented from seeking employment with another entity that could also file an H-1B petition on his behalf.  The claim that his H-1B visa would be withdrawn unless he continued to work for $15 per hour (Am. Cplt., ¶45) is misleading – if Plaintiff stopped working, irrespective of his pay rate, MDSI has to withdraw the visa petition by law.  The alleged use of Filipino cultural values, had it been successful, would have compelled Plaintiff to return to work and not threaten his employers with a lawsuit, Plaintiff did neither.  Under these circumstances, these allegations do not amount to the type of "serious harm" or "threats of serious harm" protected by the TVPA; rather, they are "permissible warning of adverse but legitimate consequences." *Headley*, *supra*; *Bradley*, *supra*.

Plaintiff does not claim that he was unlawfully terminated by MDSI from employment.  Indeed, Plaintiff states that he told Marissa Beck that "he was considering a lawsuit to reveal [their] illegal activities" when he was asked to shorten his leave (Am. Cplt., ¶70).  It is not

unreasonable for an employer to terminate an at-will employee, such as the Plaintiff herein, who refuses to return to work and threatens to file a lawsuit against the employer.  Congress never intended to use the TVPA to criminalize an employer's decision to terminate an employee and advise immigration authorities that such employee had been terminated.  "Certainly, the TVPA was not intended to completely muzzle employers or prohibit them from mentioning certain legal realities."  *Camayo v. John Peroulis & Sonssheep, Inc.*, 2012 WL 4359086 at *5, n.6 (D. Col. Sept. 24, 2012).  Under these circumstances, there was not misuse of any legal process and Plaintiff's alleged violations of the TVPA must be dismissed.

## POINT III

### PLAINTIFF'S CLAIMS ALLEGING VIOLATIONS OF RICO FAIL AS A MATTER OF LAW AND SHOULD BE DISMISSED WITH PREJUDICE

Plaintiff's alleges violations of § 1962(c) and conspiracy under § 1962(d).  "RICO simply was not designed by Congress to encompass many of the creative and even 'extraordinary, if not outrageous uses' for which plaintiffs have labored the statute."  *Gross v. Waywell*, 628 F.Supp.2d 475 (S.D.N.Y. 2009) (citations omitted).  The Amended Complaint fails to meet fundamental pleading requirements and merely parrots the statutory language without adequate factual support.  Accordingly, these claims should be dismissed with prejudice.

### A.      Plaintiff's Failure to Allege a RICO Enterprise is Fatal.

The "enterprise" and the "persons" that Plaintiff alleges to be "associated" must be "separate and distinct."  *Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392, 398 (7th Cir. 2009).  Plaintiff may not circumvent this requirement by "alleging a RICO enterprise that 'consists merely of a corporate defendant associated with its own employees or agents carrying on the regular affairs of the defendant....'"  *Discon, Inc. v. NYNEX Corp.*, 93 F.3d 1055 (2d Cir. 1966) (citations omitted)).  It is axiomatic that a RICO person cannot associate with himself and be both the RICO defendant and the RICO enterprise.  *McCullough v. Suter*, 757 F.2d 142, 144 (7th

Cir. 1985); *see also, United States v. Computer Sciences Corp.*, 689 F.2d 1181, 1190 (4th Cir.

1982) ("'enterprise' was meant to refer to a being different from, not the same as or part of, the

person whose behavior the act was designed to prohibit"); *Kaufman v. Chase Manhattan Bank,*

*N.A.,* 581 F.Supp. 350, 357-58 (S.D.N.Y.1984) (complaint must distinguish the enterprise from

the person).

   Alleging, as Plaintiff does here, that the Defendants are the both RICO defendants ***and***

the RICO enterprise, is fatal to Plaintiff's claim.  (Am. Cplt. ¶¶110-111).  It is well settled that

Defendants cannot "associate with [themselves] any more than they can conspire with

[themselves] just by giving [themselves] a *nom de guerre*."  *McCullough*, 757 F.2d at 144.  "If

the RICO enterprise is not separable from the individual" the claim cannot be maintained."  *Id.*

Additionally, simply stating, in conclusory fashion, that the Defendants constitute an association-

in-fact enterprise is insufficient.  *See Neiman Marcus Group, Inc. v. Dispatch Transp. Corp.*,

2011 WL 1142922, *7 (S.D.N.Y. March 17, 2011) (granting motion to dismiss where conclusory

allegations failed to establish an association-in-fact enterprise).

   The allegations in the complaint are insufficient to support the claim that Defendants

"function as a unit."  Other than alleging "upon information and belief" that the other corporate

defendants' are owned and controlled by the Becks (Am. Cplt. ¶¶13-20), there are no factual

allegations against the Corporate Defendants to support the theory that they function as a

continuing unit.  *See Neiman Marcus Group, Inc.*, 2011 WL 1142922 (RICO claims dismissed

where plaintiff failed to plead facts to support the necessary structural components of the

enterprise).  In *Neiman Marcus*, the court determined that the "'conclusory naming of a string of

[defendants] does not adequately allege an enterprise.'"  *Id*. at 8 (internal citations omitted).

Similarly here, Plaintiff does no more than identify the Corporate Defendants and concludes,

without more, that the Corporate Defendants were "controlled by" the Becks.  (*See* Am. Cplt. at

¶¶ 13-20, 115-116).  Also, Plaintiff does not allege the role each Corporate Defendant played within the grand scheme of the alleged RICO Enterprise.  For instance, there are no allegations regarding Grill 21's, Pan de Sal's, Oasis,' Gramercy Group Four's or APMI's role in the RICO Enterprise.  Instead, Plaintiff merely claims that the Becks "operate[d] the RICO Enterprise using a common staff..."  (Am. Cplt. ¶115).  Plaintiff does not explain how each Defendant "recruit[ed], obtain[ed], process[ed] and provide[ed] non-immigrant healthcare workers." Notably, the alleged purpose of the RICO Enterprise is identical to the nature and general business affairs of MDSI, which is an employment agency that places healthcare workers at hospitals, clinics and other medical facilities, but no allegations are made with respect to the business purpose or activities of the order Corporate Defendants that contribute to the RICO Enterprise.  These blanket, conclusory statements are insufficient to meet the requisite structural components of a RICO enterprise.

Finally, Plaintiff's group pleading tactic is impermissible and his references to the "Becks' Companies" are insufficient to show the existence of a RICO enterprise.  *See In re Platinum and Palladum Commodities Litigations*, 828 F.Supp.2d 588 (S.D.N.Y. Sept. 13, 2011) ("[]Plaintiffs rely impermissibly on group pleading to allege the existence of predicate acts underpinning their RICO claim…[their] paragraphs do nothing to differentiate the conduct of the various Defendants…").  Rather than specify the conduct of each Defendant, Plaintiff merely name the particular Defendant and then recites the elements of the particular statute as to such Defendant's alleged involvement.  Clearly, Plaintiff falls short of the pleading requirements.

**B.     There Are No Viable Claims Of Racketeering.**

**(i)     The Alleged Predicate Acts.**

To establish a "pattern of racketeering activity," a plaintiff must plead at least two separate predicate acts of racketeering within a 10 – year time period.  18 U.S.C. § 1961(5);

14

*Jones*, 2012 WL 899247, *5.  Further, "[C]ongress did not deploy RICO as an instrument against all unlawful acts.  It targeted specific acts catalogued under section 1961(1).  *Hecht v. Commerce Clearing House, Inc*., 897 F.2d 21 (2d Cir. 1990).

a)      **Violations of 18 U.S.C. §§ 1584, 1589, 1590:**  Plaintiff's claims arising under these statutes are discussed fully above in Point II supra.  Defendants incorporate their arguments herein and, as discussed in Point II, Plaintiff's claims are wholly without merit and should be dismissed.

b)      **Violation of 18 U.S.C. § 241 and 42 U.S.C. § 1343(a):**  Plaintiff's claim for a violation of his 13th Amendment rights under 18 U.S.C. § 241 (Am. Cplt., ¶¶ 131-135) is not among the acts enumerated in 18 U.S.C. § 1961 and therefore, is not a predicate act.  42 U.S.C. § 1343 is also not a predicate act pursuant to 18 U.S.C. § 1961.  *Hecht*, 897 F.2d 21 (2d Cir. 1990).

c)      **Fraud Claims: Violations of 18 U.S.C. §§ 1341, 1343, 1351(a) and 1546**

1.      **18 U.S.C. § 1351(a):**  The allegation that Plaintiff was unlawfully recruited from the Philippines is contradicted by the fact that he signed the 2009 Agreement with MDSI on January 23, 2009 in the United States.  That the Plaintiff returned to the Philippines thereafter (Am. Cplt. ¶ 240(i)-(k)) cannot support a claim for solicitation and is meritless.

2.      **18 U.S.C. § 1546:**  Plaintiff cannot claim injuries from allegedly fraudulent statements in his immigration applications (Am. Cplt. ¶¶ 143-144) because neither his F-1 nor H-1B visa was denied; indeed, Plaintiff benefitted from such documents.

3.      **18 U.S.C. §§ 1341 and 1343:**  Plaintiff's claims of mail and wire fraud echo his claims for immigration fraud, and violations of the FLSA and TVPA.  (*See* Am. Cplt., ¶¶ 149-153).  Where, as here, mail or wire fraud is a predicate act of RICO claim, each element necessary to show mail or wire fraud must be alleged with the particularity and specificity required by Rule 9(b).  The complaint "must go beyond a showing of fraud and state the time,

place and content of the alleged mail and wire communication perpetrating the fraud." *Jones*,
2012 WL 899247, *5; *Freedom Mortg. Corp. v. Burnham Mortg., Inc.*, 720 F.Supp.2d 978, 994-
97 (N.D. Ill. 2010).  Moreover, "in a case involving multiple defendants...'the complaint should
inform each defendant of the nature of his alleged participation in the fraud.'"  *Freedom Mortg.
Corp.*, 720 F. Supp. 2d at 994-97.  In other words, "the plaintiff must 'connect the allegations of
fraud to each individual defendant'" and the "complaint cannot generally refer to fraudulent acts
by all or some of the defendants because each defendant is entitled to be informed of facts
surrounding the allegations so that they may respond." *Colony at Holbrook, Inc. v. Strata G.C.,
Inc.*, 928 F.Supp.1224, 1231 (E.D.N.Y. 1996).

Here, Plaintiff does not plead how each Defendant committed predicate acts of mail or
wire fraud in support of his RICO claim.  Again, Plaintiff's general allegations against
Defendants are insufficient under RICO.  Plaintiff alleges, for instance, that "in or about the first
half of 2011" or "in 2011 and 2012" Defendants used the "mail or wires to transmit false and
fraudulent" LCAs.  This is inadequate to state a claim for mail and wire fraud.  Moreover, one
cannot commit mail or wire "fraud by fooling one person to receive something of value from
another." *Livingston Downs Racing Ass'n, Inc. v. Jefferson Downs Corp.*, 257 F. Supp. 2d 819,
830-31 (M.D. La. 2002).  Plaintiff benefitted from such applications and therefore cannot
establish fraud as a predicate act for RICO purposes.  To the extent that the Plaintiff is claiming
that the Defendants furthered their alleged mail and wire fraud by mailing him "payment
advices," that claim fails.  As the Court in *Lundy* noted, "the mailing of pay stubs cannot further
the fraudulent scheme because the pay stubs would have revealed (not concealed) that Plaintiffs
were not being paid for all of their alleged compensable overtime." *Lundy* at 120.  Here, if
Plaintiff's claims are credited, the mailing of payment advices would have revealed the alleged
mail fraud – not concealed it.

### 4.    Extortion

Plaintiff merely recites the elements of the NY Penal Law § 155.05(2)(e) which are based on the same facts supporting his TVPA, FLSA and breach of contract claims.  *See* Am. Cplt., ¶ 157-173.  In so doing, Plaintiff converts his civil claims into criminal extortion to fit RICO.  To the extent Plaintiff claims extortion relate to false statements to the USCIS, Plaintiff cannot claim to be victim of extortion based upon acts directed at third-parties from which he derived benefits.  Moreover, Plaintiff was, in fact, compensated at almost double the federal and New York State minimum wage for his services which nullify his claim.

Further, courts in this circuit have routinely held that generalized and conclusory allegations of extortion are insufficient to allege a pattern of racketeering for the purposes of a civil RICO claim.  *See Mathon v. Feldstein*, 303 F.Supp.2d 317 (E.D.N.Y. 2004); *Gregoris Motors v. Nissan Motor Corp.*, 630 F.Supp. 902 (E.D.N.Y. 1986).  In *Mathon*, the court rejected the extortion claim because the "[t]he amended complaint fail[ed] to allege the date the alleged extortion occurred, the nature of the alleged threats and coercion, an effect on interstate commerce, and the purpose of the defendants['] alleged actions.  *Mathon*, at 325.  Similarly, the court in *Gregoris Motors*, explained that "without any indication of even the vaguest sort as to when the alleged bribes or extortion demands occurred and who made them to whom[,]" "these allegations are plainly insufficient as predicate acts to support a RICO claim."  *Gregoris Motors*, 630 F.Supp. at 913.  Plaintiff's extortion allegations are just as vague and anemic as the rejected pleadings in *Mathon* and *Gregoris Motors* as they do not identify the particular defendant who engaged in the alleged extortionate conduct or specify the time and circumstances of the purported threats.  As such, Plaintiff's extortion claims should be dismissed in its entirety.

### (ii)    Failure to Plead Pattern of Racketeering.

Plaintiff claims, "upon information and belief," that Defendants have engaged in racketeering activity since 2001 with respect to more than 100 non-immigrant healthcare workers

yielding similar results and causing similar injuries to plaintiff and other non-immigrant employees. (See Am. Cplt., ¶¶53, 60, 174-182). These allegations are not only baseless but they constitute conclusions of law that need not be accepted as true. *See Watkins v. Smith*, 2012 WL 5868395, *5 (S.D.N.Y. 2012) (allegations that defendants targeted approximately 50 to 100 targets each month was nothing more than conclusions of that law which need not be accepted as true). Despite its 287 paragraphs, the Amended Complaint, at its core, pleads a single scheme to defraud concerning only one purported victim over a short period of time. Accordingly, it fails to plead the requisite open-ended or closed-ended continuity. "When the fraudulent conduct alleged involves such a limited number of perpetrators, small number of victims, and limited goal, it cannot support a claim of open-ended or closed-ended continuity." *D.R.S. Trading Company, Inc. v. Fisher*, 2002 WL 1482764 (S.D.N.Y. July 10, 2002). Additionally, predicate acts that are not inherently unlawful have not been found to support a "threat of continuing criminal activity arising from conduct that extended over an even longer period." *FD Property Holding*, 206 F.Supp.2d at 370 citing *United Sates v. Aulicino*, 44 F.3d 1102, 1111 (2d Cir. 1995). *See also, Skylon Corp. v. Guilford Mills, Inc*., 1997 WL 88894, *6 (S.D.N.Y. Mar 3, 1997) (predicate acts of "verbal and written misrepresentations made over the telephone and in letters constituting wire and mail fraud" are not inherently unlawful but rather are "typical of garden-variety fraud claims"). Accordingly, Plaintiff fails to adequately plead this RICO element.

### C.    Failure to Allege a RICO Conspiracy Under § 1962(d).

To state a claim under § 1962(d), a plaintiff must allege that "each defendant by words or actions, manifested an agreement to commit two predicate acts in furtherance of the common purpose of the RICO enterprise." *United States Fire Ins. Co., v. United Limousine Service, Inc.*, 303 F.Supp.2d 432, 453 (S.D.N.Y. 2004). Here, Plaintiff simply states that each Defendant

"violated 18 U.S.C. § 1962(d) by conspiring to violate 18 U.S.C. § 1962(c)" (Am. Cplt. at ¶¶ 186-187), but does not allege any specific act committed by each Defendant in furtherance of their purported conspiracy to violate RICO.   Such bald conclusions of law are insufficient. Furthermore, a plaintiff must allege that "each defendant knowingly agreed to participate in the conspiracy."  *Fahlenbach v. Trans Pac. Captial (USA) Inc.,* No. 95-civ-8776, 1996 WL 22602, *6 (S.D.N.Y. 1996).   For instance, Plaintiff claims that an "agreement was entered into and commenced no later than 2008" for acts that began in 2001 (an inconsistent allegation as it is) and that each Defendant "by words or actions, manifested an agreement to commit predicate acts in furtherance of the common purposes of the RICO enterprise."   (Am. Cplt. at ¶¶ 188-189). This is insufficient under the law.  Plaintiff simply reiterates the elements of a RICO conspiracy claim and lists the alleged violations committed by the Defendants.  (*See* Am. Cplt. at ¶¶ 190-196).   Such allegations lack the "factual allegations supporting an inference that the various defendants consciously agreed to become part of a RICO conspiracy.  *Adler v. Berg Harmon Assocs.*, 790 F.Supp. 1222, 1234 (S.D.N.Y. 2000).   Accordingly, Plaintiff fails to plead a RICO conspiracy.

Finally, as discussed above at Point III(A-B) supra, because Plaintiff fails to allege a substantive violation 18 U.S.C. § 1962(c), Plaintiff's claims under § 1962(d) must also fail and should be dismissed.

### D.      Plaintiff Does Not Have A RICO Injury.

A plaintiff must show "injury by the conduct constituting the violation" caused by a pattern of racketeering activity or by individual RICO predicate acts."   *Hecht v. Commerce Clearking House, Inc.* 897 F.2d 21, 23 (2d Cir. 1990).  *See Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 497 (1985) ("the compensable injury necessarily is the harm caused by the predicate

acts sufficiently related to constitute a pattern").  Plaintiff's purported injuries are insufficient to state a RICO injury.

Plaintiff's claim that he was "deprived" of his "lawful immigration status" does not flow from any alleged RICO violation. (Am. Cplt. ¶ 183).  Rather, Plaintiff's alleged "deprivation" of his "lawful immigration status" is due to his failure to return to work when his employer asked him to.  Likewise, Plaintiff's claims that he was "deprived of time and a half pay for overtime" and that he was "forced to work at wages less than the prevailing wage reported to the government" (Am. Cplt. ¶ 183) are not RICO injuries.  Notably, these claimed injuries are duplicative of Plaintiff's injuries under his FLSA claim.  To the extent that Plaintiff's RICO claims and injuries are predicated on alleged violations of the FLSA, they are preempted by the FLSA.  *See DeSilva v. North Shore–Long Island Jewish Health Sys., Inc*., 770 F.Supp.2d 497, 515 (E.D.N.Y.2011) (allowing plaintiffs to pursue a civil RICO claim grounded in the same facts as plaintiffs' FLSA claim would… render the FLSA's remedial provisions meaningless).  Finally, the Second Circuit has held that the "loss of employment…for reporting or refusing to participate in an enterprise  engaging in a pattern of racketeering activity is not injury sufficient for standing."  *Hecht supra* at 21.   Finally, Plaintiff's claims that he was "forced to pay exorbitant and illegal fees" do not flow from a RICO violation.

## POINT IV

### THE BREACH OF CONTRACT CLAIM MUST BE DISMISSED

**A.      Plaintiff Does Not Allege Performance.**

Here, Plaintiff claims that Defendants failed to pay the contractual hourly rate (Am. Cplt., ¶¶212, 231); pay all the hours worked (Am. Cplt., ¶¶213, 232); compensate him for at least 40 hours per week (Am. Cplt., ¶¶214, 233); and secure and obtain relevant work authorizations for the duration of each contract (Am. Cplt., ¶¶215-217, 234-236).  However, Plaintiff does not –

and cannot – allege that he rendered services for the positions specified in the Agreements. (Exhs. A and B, ¶ 1).  Plaintiff also did not acquire the necessary licenses.  Thus, the contracts could not take effect unless and until Plaintiff renders the specified services.  Under New York law, a party's failure to comply with a condition precedent bars a party from asserting a breach of contract claim.  *Hadden v. Consolidated Edison Co. of New York*, 45 N.Y.2d 466 (1978); *Holland Industries, Inc. v. Adamar of New Jersey, Inc.*, 550 F. Supp. 646, 647 (S.D.N.Y. 1982).

The mere fact that Plaintiff received payment for holidays and sick leave, or that Defendants allegedly relied on the confession of judgment, is not waiver.  Such compensation may occur independent of a contract.  Moreover, "substantial performance is ordinarily not applicable to excuse the non-occurrence of an express condition precedent."  *Oppenheimer & Co. v. Oppenheim, Appel, Dixon & Co.*, 86 N.Y.2d 685, 693 (1986); *Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc.*, 404 F.3d 566, 601 (2d Cir. 2005).  Waivers of a contractual condition is "not lightly presumed" under New York law.  *Jofen v. Epoch Biosciences, Inc.*, 2002 WL 1461351 at *7 (S.D.N.Y. 2002).  Therefore, waivers will not be inferred unless the intent to waive is clear.  *Seven-Up Bottling Co. (Bangkok), Ltd. v. PepsiCo., Inc.*, 686 F.Supp. 1015, 1023 (S.D.N.Y. 1988); *see also McAllister Lighterage Line, Inc. v. Insur. Co. of North America*, 244 F.2d 867, 871 (2d Cir. 1957) (intent to waive must be "plain and unequivocal").

In any case, Plaintiff's allegations that Defendants did not obtain the necessary work authorizations (Am. Cplt., ¶¶215-217, 234-236) are contradicted by the student (F-1) visa and the H-1B (working) visa secured on his behalf.  (Am. Cplt., ¶¶36, 50).  Moreover, the Agreements expressly state that Plaintiff is an at-will employee (Montoya Decl., Exhs. A and B, at ¶ 11); thus, neither of these Agreements obligated MDSI to employ Plaintiff for the duration of the Agreements.  Also, the 2011 Agreement provides a 25-hour work week, and not 40 hours.  Thus, even if the 2011 Agreement was in effect, there can be no breach as to that allegation.

**B.**     **The Breach Of Contract Against The Non-Employer Defendants is Insufficient.**

Plaintiff alleges breach of contract against the Corporate Defendants, other than MDSI, because they are "affiliates" of MDSI.  (Complaint, ¶¶ 121, 128).  But a party who is not a signatory to a contract cannot be held liable for breaches of that contract.  *See Black Car & Livery Ins., Inc. v. H & W Brokerage, Inc*., 28 A.D.3d 595, 813 N.Y.S.2d 751, 752 (2006) ("breach of contract was properly dismissed...because the respondent was not a party to the agreement"); *Bellino Schwartz Padob Adver., Inc. v. Solaris Mktg. Group, Inc*., 222 A.D.2d 313, 635 N.Y.S.2d 587, 588 (1995) (dismissed the breach of contract action because defendant was not a signatory to the agreement).

Other than MDSI, none of the Corporate Defendants and are signatories to either Agreement and none are specifically named.  Indeed, Plaintiff does not allege how the Corporate Defendants are "affiliates" of MDSI, or allege a parent-subsidiary relationship among the Corporate Defendants, or allege which corporation is in control over another.   Moreover, Plaintiff does not allege any facts to show that these Corporate Defendants, other than MDSI, participated in the negotiations of the contract or otherwise engaged the services of Plaintiff.

Similarly, the law only treats the employees of a corporate entity as the employees of a related entity under extraordinary circumstances.  *Murray v. Miner*, 74 F.3d 402, 404 (2d Cir. 1996).  In this action, Plaintiff does not allege that he ever performed services as either a licensed Physical Therapist or Physical Therapy Rehab Manager, pursuant to the Agreements, on behalf of all the other Defendants aside from MDSI.   Accordingly, Plaintiff's claim against these Corporate Defendants should be dismissed.

The claim for breach of contract against the Individual Defendants is based on the allegation that "exercised complete domination" over the Corporate Defendants.  (Complaint, ¶¶ 122, 129).  Under New York law, "an agent who signs an agreement on behalf of a disclosed

principal will not be individually bound to the terms of an agreement unless there is clear and explicit evidence of the agent's intention to substitute or superadd his personal liability for, or to, that of his principal." *Cement & Concrete Workers Dist. Council Welfare Fund v. Lollo*, 35 F.3d 29, 35 (2d Cir.1994); *see also Metropolitan Switch Bd. Co., Inc. v. Amici Associates, Inc*., 20 A.D.3d 455, 799 N.Y.S.2d 531, 531–32 (2d Dept.2005) (individual defendants not liable for breach of contract where they executed the contract solely in their capacities as corporate officers).

Here, the signatory to the Agreements is MDSI and executed by Defendant Marissa Beck, as the Marketing Director, on its behalf.  There is nothing in the Agreements that pertain to Defendant Marissa Beck, individually, or that binds her in her individual capacity.  Defendant Henry Beck is not referenced in these documents.  To the extent that these allegations can be construed as "piercing the corporate veil," a "purely conclusory allegation[] cannot suffice to state a claim based on veil piercing or alter ego liability, even under the liberal notice pleading standard."   *In re Currency Conversion Fee Antitrust Litig*., 265 F.Supp.2d 385, 426 (S.D.N.Y.2003).  To simply plead that the individual defendants controlled the corporations, without more, are insufficient for a finding that Defendants Henry and Marissa Beck are individually liable for a breach of contract.

## POINT V

### PLAINTIFF'S FRAUD CLAIM IS DUPLICATIVE OF HIS CLAIM FOR BREACH OF CONTRACT

It is well-established that a contract action may not be converted into one for fraud by the mere additional allegation that the contracting party did not intend to meet his contractual obligation.  *Comtomark, Inc. v. Satellite Communications Network, Inc.*, 497 N.Y.S.2d 371 (1st Dep't 1986).  Under New York law, "to maintain a claim of fraud in addition to a standard claim for breach of contract, a plaintiff must either:  (a) demonstrate a legal duty separate from the duty

to perform under the contract; (b) demonstrate a fraudulent misrepresentation collateral or extraneous to the contract; or (c) seek special damages that are caused by the misrepresentation and unrecoverable as contract damages." *Bloom v. Rock*, No. 06 Civ. 6301, 2010 WL 2267468 at *7 (S.D.N.Y. May 27, 2010) (citations omitted). Here, Plaintiff does not allege any special relationship among the parties that would give rise to a legal duty separate and apart from their contractual relationship. *Bezuska v. L.A. Models, Inc.*, No. 04 Civ. 7703, 2006 WL 770526 at *13 (S.D.N.Y. Mar. 24, 2006). Although Plaintiff alleges that he was "injured financially by reason of defendants' false representations" (Complaint, ¶ 137), such financial injuries, if any, can only arise from the alleged failure to pay him the agreed upon hourly rate and the alleged failure to maintain his legal status for the duration of the employment agreement. These are the same facts that form his breach of contract claim. Therefore, because Plaintiff's claim for fraud is redundant of the breach of contract claim, the fraud claim should be dismissed.

To the extent that Plaintiff alleges the Defendants submitted fraudulent visa applications, the United States government retains the exclusive right to enforce immigration statutes and private parties lack standing to raise such immigration issues. *Chaves v. Freshpict Foods, Inc.*, 456 F.2d 890 (10th Cir. 1972). Finally, the damages sought by Plaintiff are all duplicative of the damages he is seeking from his claim for breach of contract. *See* Point IV *infra*.

## POINT VI

### PLAINTIFF'S QUASI-CONTRACT CLAIMS SHOULD BE DISMISSED

Plaintiff pleads unjust enrichment (Am. Cplt., ¶¶247-263) and, in the alternative, quantum meruit (Am. Cplt., ¶¶264-286) for damages that arise from his breach of contract claims. The equitable doctrines of quantum meruit and unjust enrichment are related. "[T]he existence of a valid and enforceable written contract governing a particular subject matter" generally precludes recovery on a theory of quantum meruit or unjust enrichment for events

arising out of the same subject matter. *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 175 (2d Cir. 2005); *Payday Advance Plus, Inc. v. Findwhat.com, Inc.*, 478 F. Supp. 2d 496, 504 (S.D.N.Y. 2007).   Accordingly, to the extent that these claims are redundant of Plaintiff's breach of contract claim, they should be dismissed.

## CONCLUSION

For all of the reasons set forth herein, the Amended Complaint should be dismissed in its entirety and with prejudice.

Dated: New York, New York
      October 15, 2013

Respectfully submitted,

HINSHAW & CULBERTSON LLP
*Attorneys for Defendants*

By: *s/Concepcion A. Montoya*
    Concepcion A. Montoya (CM-7147)
    Khardeen Shillingford (KS-5266)