UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LESTER LEE JAVIER

                Plaintiff,

- against -

MARISSA TEVES BECK, et al.,

                Defendants.

Docket No. 13-cv-2926 (WHP)

## REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT

**HINSHAW & CULBERTSON LLP**
*Attorneys for Defendants*
800 Third Avenue, 13th Floor
New York, New York 10022
Tel: (212) 471-6200
Fax: (212) 935-1166

# **TABLE OF CONTENTS**

Page(s)

POINT I
    THE FLSA CLAIMS ARE DEFICIENTLY PLED ................................................................1

    A. The Alleged Non-Payment for Overtime, Unpaid Time and Minimum Wage .............1

    B. The Failure To Plead A Joint Employer Relationship Is Fatal To Plaintiff's Claims ....2

POINT II
    PLAINTIFF'S TVPA CLAIMS ARE INSUFFICIENT AS A MATTER OF LAW .................3

POINT III
    PLAINTIFF'S RICO CLAIMS REQUIRE DISMISSAL AS A MATTER OF LAW..............6

POINT IV
    PLAINTIFF'S STATE LAW CLAIMS ARE DEFECTIVELY PLED ......................................9

CONCLUSION ................................................................................................................................10

## POINT I

## THE FLSA CLAIMS ARE DEFICIENTLY PLED

**A.     The Alleged Non-Payment For Overtime, Unpaid Time and Minimum Wage**

First, Plaintiff's timesheets, which are handwritten and signed by him, completely defeat his FLSA claims as they demonstrate that he worked below 40 hours for the time period alleged in the Amended Complaint. (Montoya Decl., Ex. C). Plaintiff does not allege that Defendants instructed or otherwise forced him to omit any additional time, or submit additional timesheets for such tasks. Put simply, Plaintiff does not allege that he put MDSI on notice that he worked on additional tasks for which compensation was due. Without such notice, an employer cannot be held liable for violations of the FLSA. *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 361 (2d Cir. 2011).

Second, although Plaintiff alleges that he worked "at least" certain hours per week over 40 hours but was paid for only 35 hours (Am. Cplt., ¶¶ 89(a)-(i)), this allegation is still insufficient as a matter of law. Under Second Circuit law, a plaintiff is required to plead more and allegations of working "in excess of" or "at least" a certain number of hours will defeat an FLSA claim. (Moving Br. at 8-9). Furthermore, Plaintiff fails to specify what type of work he performed to cause him to exceed those 40 hours and, thus, there is simply no way to determine whether this time consisted of attending school, performing administrative tasks, working at the restaurant or something else. This is important because, as argued below, Plaintiff has not adequately pled a joint employer relationship among Defendants.

Third, the allegation that Plaintiff's time spent in an English language school should count towards overtime because Defendants were allegedly paid "kickbacks" (Opp. Br. at 2) is completely disingenuous. Plaintiff's attendance in school was a requirement of his student visa. (Am. Cplt., ¶ 85).

Finally, Plaintiff alleges for the first time that he was not paid the minimum wage taking into account the thousands of dollars in school fees and immigration fees that he paid for but was not required to. (Opp. Br. at 4). Assuming *arguendo*, which Defendants do not concede, that Plaintiff should not have paid those fees, such allegations are not cognizable claims under the FLSA and Plaintiff has not proffered any legal authority in support of his theory. There is no question that Plaintiff alleges that he was paid $15.00 per hour by MDSI, which exceeds the minimum wage. (Am. Cplt., ¶¶ 28, 31, 33, 39, 46 and 47). Plaintiff does not claim that the alleged school and immigration fees were deducted from his paycheck. There is simply no merit to such allegations and the Court should not allow Plaintiff's meritless theory to create new law.

**B.     The Failure To Plead A Joint Employer Relationship Is Fatal To Plaintiff's Claims.**

Plaintiff exclusively relies on the term "together with its affiliates," contained in the Employment Agreements with MDSI, as a premise for joint employment. As set forth in the moving papers, a defendant cannot be held liable for FLSA violations based merely on common ownership or an enterprise where some entities are employers. (Moving Br. at 6). Plaintiff contends that he paid immigration fees to Oasis; that Gramercy Group's bank statements were submitted in support of his student visa (as opposed to working visa); and that he worked odd jobs for Grill 21 and APMI. (Opp. Br. 5-6). These allegations do not amount to joint employment under the law as they do not amount to the type of level and control over employment required by law. *Id.* As such, the claims against the non-employer Corporate Defendants should be dismissed.

The same holds true for the Individual Defendants. Specifically, all that is ever alleged against Henry Beck is that he signed the affidavit in support of Plaintiff's student visa, which is independent of Plaintiff's employment. The allegations against Marissa Beck are in her capacity as an officer of MDSI and the law is clear that supervisory control is insufficient by itself for

FLSA purposes. (Moving Br. at 7). The allegations concerning Marissa Beck's decision to shorten Plaintiff's leave or terminate his employment have no bearing on whether he was paid straight time, overtime or the minimum wage. Finally, Plaintiff's allegation that occasional work outside MDSI should be included in his FLSA claims have no legal basis; Plaintiff has not cited any legal authority to support that position and the Court should dismiss this claim.

## POINT II

## PLAINTIFF'S TVPA CLAIMS ARE INSUFFICIENT AS A MATTER OF LAW

Plaintiff's allegations regarding defendants' conduct – even if accepted as true (they are not) – do not rise to the level of "serious harm" required to sustain a claim under the TVPA. Plaintiff has cited to no caselaw where a court has found a violation of the TVPA under circumstances that remotely mirror those present in this case. In fact, plaintiff cites only criminal cases in which the conduct at issue evokes expected images of indentured servitude; plaintiff's allegations do not evoke a similar response.

Contrary to plaintiff's assertion, the clause in the Agreements requiring the repayment of $15,000 is not a threat of serious harm as contemplated by the TVPA. (Opp. Br. at 8). To demonstrate serious harm under the TVPA, the supposed threat must be evaluated pursuant to a reasonable person standard. 18 U.S.C. §1589 (c)(2). Plaintiff fails to meet this standard.

Plaintiff asserts that the prospect of repaying $15,000 was so onerous (representing 25% of annual gross wages under the contract) (Amended Compl. §§43-44) that it prevented him from leaving MDSI's employ. The Court must dismiss this contention. First, it is worth noting that liquidated damages clause is not per se illegal in New York. Indeed, courts in New York have upheld provisions for liquidated damages in employment contracts. *See e.g., GFI Brokers, LLC v. Santana*, 2008 WL 3166972, at *2 (S.D.N.Y. 2008) (liquidated damages provision in context of restrictive covenant upheld). More importantly, while plaintiff was working for

3

MDSI he was not working pursuant to any contract. Plaintiff was not under contract because he had not yet been placed in the position specified on the contracts with MDSI. Accordingly, plaintiff could have left MDSI's employ at any time with no monetary repercussions. Certainly, a reasonable person would not feel threatened or be faced with serious harm if he could seek and accept alternative employment with no consequences for doing so.

Plaintiff's reliance on *U.S. v. Dann*, 652 F.3d 1160 (9th Cir. 2011) is misplaced. In *Dann*, the threat to the employee of repayment of $7,500 was deemed "serious harm" because the employee did not receive any wages, and the defendant's failure to pay her and the lack of money to live or leave was sufficiently serious to compel her to continue working. Plaintiff was not in a similar position. By plaintiff's own admission, he was being paid $15.00 per hour, earning approximately $32,000 per year. In addition, Plaintiff does not allege that MDSI prevented him in any other way from seeking employment with another employer who could sponsor him for the H-1B visa. Accordingly, plaintiff, unlike the employee in *U.S. v. Calimlim*, 538 F.3d 706 (7th Cir. 2008), had an exit option; he could have sought employment elsewhere with an employer who could apply for a H-1B visa for him. He chose not to do so. Plaintiff, unlike the employee in *U.S. v. Djoumessi*, 538 F.3d 547 (6th Cir. 2008), was not vulnerable because he was legally in the United States, he lived away from his employers, his movements were not restricted or monitored, his passport was not confiscated, he spoke English, and he was paid wages. Under the totality of the circumstances, the alleged threat of repayment is not sufficiently serious because no reasonable person faced with this repayment option would have remained in an employment relationship that he deemed so oppressive. Moreover, Plaintiff was not under contract, and to the extent he believed he was, he had a reasonable exit option that he had negotiated; he simply chose not to avail himself of it.

4

Second, plaintiff's own actions belie his assertion that the liquidated damages clause threatened him with "serious harm". Plaintiff voluntarily entered into not one – but two – employment contracts with his employer agreeing to, among other things, the confession of judgment in exchange for the employer's promise to take all reasonable steps to secure a H-1B visa for him. If plaintiff truly believed the employment contract to constitute a threat of "serious harm," he would not have voluntarily entered into the second contract for an additional three year period when there were only 6 months remaining on the first contract term.

Third, defendants' alleged statements that they would withdraw their support of his H-1B visa application if plaintiff did not return to work and the possibility of deportation if such application was withdrawn do not amount to "threats of serious harm" under the TVPA. Rather, they are permissible warnings of adverse but legitimate consequences. *See U.S. v. Bradley*, 390 F.3d 145, 151 (1st Cir. 2004) (court agrees that "serious harm" as extended to non-physical coercion may create jury misunderstanding as to the nature of the pressure that is proscribed). As noted in defendants' main brief, defendant DMSI was legally obligated to withdraw the H-1B visa once plaintiff's employment with it ended. (Moving Br. at 11; 8 C.F.R. § 214.2(h)(11)).

Plaintiff's attempt to link the employment agreements to the TVPA must fail. The TVPA is not intended to cover arms' length negotiations between an employer and employee and the transaction between plaintiff and MDSI is not the type of transaction that courts have held to violate the statute. Plaintiff is unhappy with the bargain he struck with MDSI and is imploring the Court to rewrite the contract and to stretch applicability of the TVPA to cover the parties' arms' length negotiations. The Court should decline plaintiff's supplication.

5

## POINT III

### PLAINTIFF'S RICO CLAIMS REQUIRE DISMISSAL AS A MATTER OF LAW

Plaintiff's opposition does not cure the defects in pleading the RICO claim and, thus, this claim should be dismissed. First, Plaintiff cannot satisfy the "distinctness" test with respect to the alleged "persons" conducting the enterprise and the "enterprise" itself. Second, Plaintiff has not plead that the Defendants functioned as unit. Third, Plaintiff's alleged predicate acts and pattern of racketeering claims are too narrow and involve only a single "scheme" and a single "victim." Finally, Plaintiff lacks standing as he has not suffered an injury within the meaning of RICO.

As an initial matter, Plaintiff acknowledges that his amended pleading may be defective and seeks permission to amend his complaint – for a second time – should the Court conclude as much. (Opp. Br. at 13). It is clear, however, that such an amendment would be futile. Plaintiff claims that the Becks "disregard[ed] corporate formalities" and "dominat[ed] the corporate defendants" in furtherance of the purported scheme. (Am. Cplt. ¶9). Plaintiff also argues that the Defendants are "joint employers" and he should be allowed to pierce the corporate veil to reach the individual defendants. (Opp. Br. at 4, 6-7). Therefore, Plaintiff claims that the corporate defendants and individual defendants are one and the same. These allegations torpedo the RICO claims because Plaintiff has so intertwined the Defendants and cannot separate them in order to satisfy the "distinctness" test for his RICO claims. *See Physicians Mut. Ins. Co. v. Greystone Serv. Corp., Inc.*, 2009 WL 855648 (S.D.N.Y. 2009) (alter ego allegations were insufficient to show that the defendants were separate and distinct for a RICO enterprise); *Friedlander v. Rhoades*, 962 F.Supp. 428, 432 (S.D.N.Y. 1997) (allegation that RICO enterprise and individual defendants were alter egos of one another was "fatal" to plaintiff's RICO claim).

6

Further, it is well-settled that a "RICO person cannot associate with himself and be both the RICO defendant and the RICO enterprise." *See Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339, 344 (2d Cir. 1994). Plaintiff is required to allege the existence of two distinct entities: (1) a "person" and (2) an "enterprise" that is not simply the same person referred to by a different name. *First Capital Asset Mgmt. Inc. v. Satinwood, Inc.*, 385 F.3d 159, 173 (2d Cir. 2004). Here, Plaintiff alleges that the Defendants "collectively, constitute an association-in-fact." (Am. Cplt. at ¶110). Further, these Defendants, "collectively, constitute an enterprise within the meaning of 18 U.S.C. § 1961(4) (the "RICO Enterprise")." (Am. Cplt. at ¶111). In so doing, it is unclear whether the RICO "person" was conducting the affairs of the purported RICO "enterprise" or was carrying on the regular affairs of the Corporate Defendants.

Second, Plaintiff does not plead the specific role and related activities of each Defendant or adequately plead that the Defendants functioned as unit. Rather, Plaintiff relies upon "group pleading" and either lumps the Corporate Defendants together as one, claiming that they were "controlled" by the Becks. To the extent that Plaintiff alleges the use of Gramercy Group's bank statement to support Plaintiff's student visa application and payments allegedly made to Oasis (Opp. Br. at 14), these are isolated events and insufficient to satisfy the organizational structure requirement or particularize how the Defendants functioned as unit.

Plaintiff also plays fast and loose with the facts submitted to this Court. In his Opposition, Plaintiff – for the first time – "alleges that [the] defendants used false statements to recruit him to *return* to the United States to work for them after he *returned* to the Philippines." (Opp. Br. at 15 (emphasis added)). This could only mean that Plaintiff was already in the United States when the 2009 Employment Agreement was signed and, thus, could not have been recruited from the Philippines (Am. Cplt., ¶ 137).

7

Third, Plaintiff's alleged social security and immigration fraud claims fail as a matter law. Plaintiff incorrectly states that the "defendants do not dispute that plaintiff has adequately alleged violations of 42 U.S.C. § 1383a, or that such violations qualify as predicate acts of racketeering under 18 U.S.C. § 1961." (Opp. Br. at 14). To the contrary, Defendants contend that "42 U.S.C. § 1343 is also not a predicate act pursuant to 18 U.S.C. §1961." (Moving Br., Point III(B)(b)). Notably, Plaintiff does not rebut Defendants' arguments concerning his claimed violation of 18 U.S.C. §241. Moreover, with respect to the claimed immigration fraud, Plaintiff does not plead reliance on any alleged misrepresentation made by the Defendants, or that he was denied a visa as a result.

Fourth, Plaintiff's allegations involve a narrow, single scheme, with one victim: i.e. alleged fraudulent immigration applications and Plaintiff as the only victim. Thus, Plaintiff cannot satisfy the requisite open-ended or closed-ended continuity element of RICO. While Plaintiff continues to refer the Court to a prior DOL determination letter, he does not allege that there has been a finding by a governmental agency that the Defendants have engaged in any subsequent wrongdoing. Also, the conclusory allegations that Defendants have harmed "more than 100 non-immigrant" workers or have filed "more than 750" applications is insufficient to show a pattern of racketeering. *See Watkins v. Smith*, 2012 WL 5868395, at *5 (S.D.N.Y. 2012) (allegations that defendants targeted approximately 50 to 100 targets each month was nothing more than conclusions of law which need not be accepted as true). Plaintiff offers no specificity as to these anonymous "100 non-immigrant worker" or the "750 applications" nor does he claim any injuries as direct result of these acts.

Finally, Plaintiff has not alleged a concrete injury that is a result of any claimed RICO violation. Indeed, Plaintiff's alleged injuries are speculative and his claim that his visa

application was withdrawn does not arise from a RICO violation. Rather, as discussed supra, Defendants were obligated to inform the necessary authorities that the Plaintiff refused to return to work despite repeated requests by the Defendants. Plaintiff also fails to allege how each Defendant "manifested" its agreement to violate RICO. Accordingly, Plaintiff's RICO conspiracy claims must be dismissed as a matter of law.

### POINT IV

### PLAINTIFF'S STATE LAW CLAIMS ARE DEFECTIVELY PLED

As an initial matter, the Employment Agreements are only between Plaintiff and MDSI. Because no other defendant is a signatory to these documents, this claim must be dismissed as against all Defendants. Allegations of common ownership or senior management responsibility do not reach the threshold required to impose liability upon a non-signatory under an alter ego theory. *Physicians Mut. Ins. Co.*, 2009 WL 855648, at *4. With respect to MDSI, Plaintiff does not allege in the Amended Complaint that Defendants ever prevented him from obtaining his physical therapist license; he raises that for the first time in his opposition to the instant motion to dismiss (Opp. Br. at 23). Plaintiff cannot dispute that he had the opportunity since 2009 to take the licensing exam but did not do so. Without this license, Plaintiff does not qualify for a position as a licensed physical therapist. Thus, the 2009 Employment Agreement did not take effect.

Plaintiff's allegation that MDSI failed to take "all reasonable steps" by submitting fraudulent applications (which is denied) must also be dismissed because he was never denied or otherwise faced deportation proceedings in connection therewith. Plaintiff attempts to maintain his fraud claim by contending that the damages for fraud are "unrelated" to the damages for breach of contract. (Opp. Br. at 24). A plaintiff should not be allowed to circumvent the pleading requirements simply by seeking a different relief when the underlying the claim arises

from the same operative facts. *See, e.g., Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F.Supp.2d 162, 207 (S.D.N.Y. 2011) (claim seeking different relief dismissed as duplicative as it arose from same operative facts).

Finally, to the extent Plaintiff seeks damages for quantum meruit or unjust enrichment for work performed other than those specified in the Employment Agreements, Plaintiff admits that he was paid: as a physical therapy aide, he was paid $15 per hour, and $9 per hour as a cook or dishwasher. Therefore, these claims fail as a matter of law and must be dismissed.

## **CONCLUSION**

For all of the foregoing reasons and the reasons set forth in their moving papers, the Amended Complaint should be dismissed in its entirety and with prejudice.

Dated: New York, New York
December 12, 2013

                            Respectfully submitted,

                            HINSHAW & CULBERTSON LLP
                            *Attorneys for Defendants*

                            By: s/Concepcion A. Montoya
                                Concepcion A. Montoya (CM-7147)
                                Maureen M. Stampp (MS-8453)
                                Khardeen Shillingford (KS-5266)

130704763v5 0948047